1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

## UNITED STATES  DISTRICT COURT

### Northern District of California

BOARD OF TRUSTEES, in their capacities as
Trustees of the LABORERS HEALTH AND
WELFARE TRUST FUND FOR NORTHERN
CALIFORNIA; LABORERS VACATION-
HOLIDAY TRUST FUND FOR NORTHERN
CALIFORNIA; LABORERS PENSION
TRUST FUND FOR NORTHERN
CALIFORNIA; and LABORERS TRAINING
AND RETRAINING TRUST FUND FOR
NORTHERN CALIFORNIA,

                Plaintiffs,

    v.

PROTECH SERVICES, INC.,

                Defendant.
_____/

No. C 12-01047 MEJ

**ORDER FOR CLERK OF COURT TO
REASSIGN CASE**

**REPORT AND RECOMMENDATION
RE: PLAINTIFF'S MOTION FOR
DEFAULT JUDGEMENT**
[Dkt. No. 23]

### I.   INTRODUCTION

    Plaintiffs, the Board of Trustees of four employee benefits trust funds, filed this action pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, seeking damages stemming from Defendant Protech Services., Inc.'s, alleged breach of a collective bargaining agreement.  Complaint ("Compl"), Dkt. No. 1.  Currently pending before the Court is Plaintiffs' Motion for Default Judgment.  Dkt. Nos. 23 (Motion or "Mot."), 24 (Brief in Support or "Br.").  In its Motion, the Plaintiffs request that the Court grant default judgment and award unpaid contributions, as well as interest, liquidated damages, and attorneys' fees and costs, pursuant to the parties' agreements.  Mot. at 2-3; Br. at 2.  After carefully reviewing Plaintiffs' Motion and the controlling authorities, the undersigned issues this Report and Recommendation, **RECOMMENDING** that Plaintiffs' Motion for Default Judgment be **GRANTED**.  Further, because Defendant has not

consented to the undersigned's jurisdiction, the Court **ORDERS** the Clerk of Court to **REASSIGN** this case to an Article III District Court Judge.

## II.   BACKGROUND

Plaintiff Board of Trustees is comprised of Trustees of the Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, and Laborers Training and Retraining Trust Fund for Northern California.  Compl. ¶ II.  Each of the Trust Funds is an employee benefit plan created by a written Trust Agreement subject to and pursuant to § 302 of the LMRA, 29 U.S.C. § 186, and a multi-employer employee benefit plan within the meaning of §§ 3, 4, and 502 of ERISA, 29 U.S.C. §§ 1002, 1003, and 1132.  *Id*.; Declaration of Michelle Lauziere, Dkt. No. 25 ("Lauziere Decl.")[1] ¶ 4 & Ex. A.  The Trust Funds consist of all employee fringe benefit contributions that are to be made by employers pursuant to collective bargaining agreements, as well as all returns on contributions and any other property received or held by the Trust Funds.  Compl. ¶¶ IV-V.  Each of the Trust Funds is administered by a Board of Trustees which may bring this action in the name of the Trust Funds pursuant to the express provisions of the Trust Agreements.  *Id*.  ¶ II; Lauziere Decl., Ex. A.[2]

Defendant Protech Services, Inc., is a California corporation that engages in construction work.  Lauziere Decl. ¶ 8.  Defendant is an employer within the meaning of § 3(5) and § 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145, and an employer in an industry affecting commerce within the meaning of § 301 of the LMRA, 29 U.S.C. § 185.  *Id*.; Compl. ¶ III.  Defendant is a party to a written collective bargaining agreement with the Northern California District Council of Laborers.  Lauziere

---

[1]  Ms. Lauziere is the Accounts Receivable Manager for the Laborers Funds Administrative Office of Northern California.  Lauziere Decl. ¶ 1.

[2]  Those provisions are found at Art. IV, § 3 of the Health & Welfare Trust Fund for Northern California (Lauziere Decl., Ex. A, part 1, at *10), Art. IV, § 3 of the Pension Trust Fund for Northern California (*id.*, part 2, at *10); Art. IV, § 3 of the Vacation-Holiday Trust Fund (*id.*, part 3, at *11); and Art. IV, § 3 of the Laborers Training and Retraining Trust Fund (*id.*, part 4, at *10).

UNITED STATES DISTRICT COURT
For the Northern District of California

Decl. ¶ 6 & Ex. C.  Specifically, Defendant became a member of the Engineering & Utility Contractors Association ("EUCA") in or around May 2007.  *Id.* ¶ 6 & Ex. B.  By joining the EUCA, Defendant became subject to all the terms and conditions of the Northern California Laborers Master Agreement ("Master Agreement") and the Trust Agreements which govern each of the Trust Funds (collectively, the "Agreements").  *Id.* ¶ 6 & Exs. B, C & D.  The Master Agreement establishes the rates at which employers are required to make contributions to the Trust Funds, and incorporates the terms of the Trust Agreements that govern each of the Trust Funds.  *Id.* ¶ 6.  The Agreements obligate Defendant to make regular and timely contributions at specified hourly rates to the Trust Funds on behalf of employees performing covered work.  *Id.* ¶ 9; Compl. ¶ IV.  The Agreements also require Defendant to report the number of covered hours worked by, or paid to, each employee performing covered work by submitting Employer Reports of Contributions, along with the amounts owed pursuant to the Reports, to the Trust Funds.  Lauziere Decl. ¶ 9.  The Agreements provide that the Trust Funds may conduct an audit of any and all records relevant to enforcement of the Agreements.[3] *Id.* ¶ 14; Compl. ¶ V.

   If Defendant does not timely pay all contributions owed under the Agreements, Article II, section 10, of each of the Trust Agreements authorizes the Board of Trustees of the Trust Funds to assesses liquidated damages at a flat fee of $150.00 per month, along with 1.5% monthly interest on all unpaid contributions.  Lauziere Decl. ¶ 10.

   Pursuant to the Master Agreement and the Trust Agreements, an audit of the books and records of Defendant was conducted for the period of January 1, 2007, to June 30, 2009, which revealed that Defendant had not submitted contributions for 702.7 hours of covered work.  Compl. ¶ VII; Lauziere Decl. ¶ 13 & Ex. F; Supplemental Declaration of Michelle Lauziere, Dkt. No. 35 ("Suppl. Lauziere Decl.") ¶ 15 & Ex. E.  Based on the applicable contribution rates under the

---

   [3]  Specifically, the following provisions give the Trust Funds the right to compel an audit: Art. IV, § 7 of the Health & Welfare Trust Fund for Northern California (Lauziere Decl., Ex. A, part 1, at *12); Art. IV, § 7 of the Pension Trust Fund for Northern California (*id.*, part 2, at *12); Art. IV, § 7 of the Vacation-Holiday Trust Fund (*id.*, part 3, at *13); and Art. IV, § 7 of the Laborers Training and Retraining Trust Fund (*id.*, part 4, at *12).

UNITED STATES DISTRICT COURT
For the Northern District of California

Agreements, the auditors calculated that Defendant owed the Trust Funds $7,722.50 in unpaid contributions. Lauziere Decl. ¶ 13. Because these contributions were not reported or paid at the time they were due, the Trust Funds assessed interest and liquidated damages in the amount of $8,500.41. *Id*. Taken together, Plaintiffs contend that Defendant owes $16,222.91 in unpaid contributions and interest for this period. *Id*. & Ex. F.

Additionally, for the period of March 2010 – August 2011, and June 2012, Plaintiffs contend that Defendant reported the hours worked by, or paid to, its employees, but failed to timely remit full payments due totaling $43,931.85.[4] Lauziere Decl. ¶ 11; Suppl. Lauziere Decl. ¶ 6. Once Plaintiffs discovered these past-due amounts, Plaintiffs assessed a flat liquidated damages fee of $150.00 for each month. Lauziere Decl. ¶ 10. Because interest on past-due amounts accrues at 1.5% per month from the delinquency date until the amounts are paid in full, Plaintiffs contend that Defendant owes $5,100 in liquidated damages and $23,934.05 in interest for this period. *Id*. ¶ 11.

On March 1, 2012, the Board filed this action to recover the outstanding contributions from Defendant pursuant to ERISA §§ 502(a)(3) and (g)(2), 29 U.S.C. § 1132(a)(3), (g)(2), along with liquidated damages and interest. Compl. at 5-6. Plaintiffs also seek an additional audit of Defendant's books and records, an order compelling Defendant to pay contributions as required by the Agreements, and attorney's fees and costs. *Id*.

On October 2, 2012, after Defendant failed to file a responsive pleading, Plaintiffs moved for entry of default (Dkt. No. 9), which the Clerk of Court entered on October 4. (Dkt. No. 13). Thereafter, on June 20, 2013, Plaintiffs filed the instant Motion for Default Judgment, seeking unpaid contributions in the amount of $51,654.35, liquidated damages and interest in the amount of $37,534.46, attorney's fees and costs of $13,232.50 and $2,315.12, respectively, and an order

---

[4] Ms. Lauziere's Supplemental Declaration (Dkt. No. 35) demonstrates how Plaintiffs calculated the amount Defendant owed in delinquent contributions. But in that Declaration there is a difference of $23.64 between the amount claimed at ¶ 6 ($43,931.85) and the amount reflected in Exhibits A and B, which the undersigned calculates at $43,955.49. The undersigned utilizes the $43,931.85 amount as claimed in Ms. Lauziere's Supplemental Declaration ¶ 6 and throughout Plaintiffs' papers. *See* Br. at 2; Lauziere Decl. ¶ 11.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    compelling Defendant to pay further delinquent amounts which Plaintiffs might discover during a

2    mandatory audit.  Br. at 2.  Defendant did not respond to the Motion for Default Judgment.

### III.   DISCUSSION

**A.     Legal Standard**

Federal Rule of Civil Procedure ("Rule") 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case.  "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for courts to consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).  Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

**B.     Jurisdiction**

When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  The undersigned will therefore assess whether the Court has subject matter jurisdiction over this action, whether personal jurisdiction exists over the parties, and whether Plaintiffs effected proper service of process.

1.    <u>Subject Matter Jurisdiction</u>

This is an action to enforce terms of ERISA plans and to recover unpaid trust fund contributions, for breach of fiduciary duty, and for injunctive relief.  Accordingly, Plaintiffs' lawsuit

**UNITED STATES DISTRICT COURT**
For the Northern District of California

5

1  is authorized as a federal cause of action pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a).

2  Jurisdiction also exists pursuant to the LMRA § 301(c), 29 U.S.C. § 185(c).

3       2.   <u>Personal Jurisdiction</u>

4       As the party seeking to invoke this Court's jurisdiction, Plaintiffs bear the burden of

5  establishing that the Court has personal jurisdiction over Defendant.  *See Scott v. Breeland*, 792 F.2d

6  925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir.

7  1977)).  Traditional bases for exercising personal jurisdiction require the defendant's physical

8  presence, domicile, or consent.  *See, e.g.*, *Gonzales v. Palo Alto Labs, Inc.*, 2010 WL 3930440, at \*4

9  (N.D. Cal. Oct. 6, 2010); *Martin v. D-Wave Sys. Inc.*, 2009 WL 4572742, at \*2 (N.D. Cal. Dec. 1,

10  2009).  Here, the Court may properly exercise personal jurisdiction over Defendant because it is a

11  California corporation that engages in business activities in the Northern District of California, and

12  plan contributions are due and payable in the County of San Francisco.  *See* Lauziere Decl., Ex. A at

13  9 (Art. IV, § 2).  Thus, Plaintiffs' claims arise out of Defendant's business within the state, and the

14  Court may exercise personal jurisdiction over Defendant.  *Velez v. Enter. Protective Servs., Inc.*, 2011

15  WL 3443637, at \*3 (N.D. Cal. Aug. 8, 2011).

16       3.   <u>Service of Process</u>

17       In addition to ensuring that jurisdiction exists, a court must "assess the adequacy of the

18  service of process on the party against whom default is requested."  *United States v. Sundberg*, 2011

19  WL 3667458, at \*3 (N.D. Cal. Aug. 22, 2011) (internal quotations omitted).  Pursuant to Federal

20  Rule of Civil Procedure 4(h)(1)(B), a domestic corporation may be served by delivering a copy of the

21  summons and complaint to an officer or authorized agent of the company.  Fed. R. Civ. P. 4(h)(i)(B).

22  Here, Defendant's Agent for Service of Process was personally served with a copy of the Summons

23  and Complaint.  Dkt. No. 6.  Thus, the Court finds that Plaintiffs properly effected service of process.

24  **C.**   **Application of the *Eitel* Factors**

25       Having found that the Court has jurisdiction over this action and that Plaintiffs properly

26  served Defendant, the undersigned turns to the *Eitel* factors.

27       1.   <u>Possibility of Prejudice to Plaintiffs</u>

28

Under the first factor, the Court must examine whether Plaintiffs will be prejudiced if the Court denies their Motion for Default Judgment. *Eitel*, 782 F.2d at 1471-72. Here, if the Court were to deny Plaintiffs' Motion, Plaintiffs would have no other avenue for recovery, and further delay in securing a judgment would only increase the chances that Plaintiffs will be unable to recover the amounts owed. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The enforcement provisions of ERISA reserve exclusive jurisdiction to this Court for claims such as those asserted in this action; thus, denial of Plaintiffs' Motion would leave it without a remedy and prejudice Plaintiffs. Therefore, this factor weighs in favor of granting default judgment.

2.   Merits of Plaintiffs' Substantive Claim and the Sufficiency of the Complaint

The second and third Eitel factors focus on the merits of Plaintiffs' substantive claims and the sufficiency of the Complaint. *Eitel*, 782 F.2d at 1471-72. In order for these factors to weigh in Plaintiffs' favor, they must assert claims upon which they may recover. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1175.

a.   *Claim to Recover Unpaid Contributions*

Plaintiffs' claims are for unpaid contributions in violation of ERISA. Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Section 515 creates a federal cause of action against employers who do not make timely contributions to employee benefit plans, and ultimately allows plan fiduciaries to enforce pre-existing obligations created under the collective bargaining agreement. *Trs. of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009) (authorizing plan fiduciary to bring a civil action to enforce a collective bargaining agreement). In order to successfully assert a claim to recover unpaid contributions, Plaintiffs must prove the following: (1) the Trusts Funds are multi-employer plans under 29 U.S.C. § 1002(37); (2) the collective bargaining agreement obligated Defendant to make the employee benefit contributions; and

UNITED STATES DISTRICT COURT
For the Northern District of California

7

1    (3) Defendant failed to make the contribution payments pursuant to the collective bargaining

2    agreement. *Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Gervasio Envtl.*

3    *Sys.*, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004).  Here, Plaintiffs' Complaint and supporting

4    materials allege sufficient facts to prove the necessary elements.

5          As a threshold matter, Defendant must be deemed an employer before it is bound to comply

6    with § 1145.  *See* 29 U.S.C. § 1145.  An "employer" is defined as "any person acting directly as an

7    employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and

8    includes a group or association of employers acting for an employer in such capacity."  29 U.S.C. §

9    1002(5).  As indicated above, Defendant is an employer within the meaning of § 3(5) and § 515 of

10   ERISA, and an employer in an industry affecting commerce within the meaning of § 301 of the

11   LMRA.  Compl. ¶ III; Lauziere Decl. ¶ 8.

12         The requirements of § 1145 make clear that an employer must be bound under a collective

13   bargaining agreement to make employee contributions to a multi-employer plan.  *See, e.g.*, *Bd. of Trs.*

14   *of Sheet Metal Workers v. ACCU-Balance Assocs., Inc.*, 2006 WL 3591141, at *3 (N.D. Cal. Dec. 11,

15   2006).  Under ERISA, these plans are defined as employee benefit pension plans that are made

16   pursuant to a collective bargaining agreement and to which more than one employer contributes.  29

17   U.S.C. §§ 1002(3), (37).  According to Plaintiffs, the Trust Funds were set up as employee benefit

18   plans under ERISA and the LMRA.  Compl. ¶ II.  Defendant's obligation to contribute to the benefit

19   plans arose out of the Master Agreement, which incorporates the various Trust Agreements

20   establishing each of the Trust Funds.  Compl. ¶ IV.  These Agreements obligated Defendant to make

21   contributions to the Laborers Trust Funds based upon the number of hours worked by its employees.

22   *Id*.  Plaintiffs allege that Defendant failed to make timely contribution payments for several months

23   during the period of January 2007 – June 2009, March – August 2010, and June 2012.  *Id*. ¶¶ VII,

24   XIII.  Thus, pursuant to 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to an award of the unpaid

25   principal balance of the contributions.

26         Based on the foregoing, the Court finds that the Plaintiffs have sufficiently stated a claim for

27   violation of § 1145 against Defendant.

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

8

UNITED STATES DISTRICT COURT
For the Northern District of California

1

        *b.*     *Injunctive Relief*

2        Plaintiffs also seek a mandatory injunction compelling Defendant to submit to an audit of its

3 financial records for the period July 2009 through the date of inspection, in order to discover

4 additional amounts due and owing.  Compl. at ¶ XVIII; Br. at 1-2.  In support, Plaintiffs allege that

5 under the parties' Agreements, Defendant is contractually obligated to submit to an audit of financial

6 records by Plaintiffs to ensure compliance with the Agreements and to pay any outstanding

7 contributions discovered as a result of the audit.  *Id.*  The right of employee benefit plans to enforce

8 such power to audit is well-established.  *See, e.g.*, *Central States, Se. & Sw. Areas Pension Fund v.*

9 *Cent. Transp., Inc.*, 472 U.S. 559, 571-72 (1985); *Bd. of Trs. of Laborers Health & Welfare Trust*

10 *Fund for N. Cal. v. Perez*, 2011 WL 6151506, at *8 (N.D. Cal. Nov. 7, 2011).  Plaintiffs are therefore

11 entitled to an audit of Defendant's financial records.

12        Based on the foregoing, the undersigned finds that factors two and three weigh in Plaintiffs'

13 favor.

14      3.    <u>Sum of Money at Stake</u>

15        The fourth *Eitel* factor analyzes the amount of money at stake in the action.  *Eitel*, 782 F.2d at

16 1471-72.  When the amount at stake is substantial or unreasonable in light of the allegations in the

17 complaint, default judgment is disfavored. *See Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL

18 1545173, at *12 (N.D. Cal. May 29, 2007).

19        In their Motion, Plaintiffs seek $89,188.81 in unpaid contributions, liquidated damages, and

20 interest.  Br. at 5.  As discussed above, the amount Plaintiffs seek is authorized under the Agreements

21 and is thus proportionate and appropriately tailored to Defendant's specific misconduct of failing to

22 make timely contribution payments.  Additionally, the recommended judgment, as set forth below, is

23 both reasonable and required by the collective bargaining agreement and ERISA, 29 U.S.C. § 1132.

24 This factor, therefore, weighs in favor of default judgment.

25      4.    <u>Possibility of a Material Factual Dispute</u>

26        The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the

27 material facts surrounding the case.  *Eitel*, 782 F.2d at 1471-72.  Upon defaulting, the defendant is

28

9

UNITED STATES DISTRICT COURT
For the Northern District of California

1  "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DirecTV, Inc. v.*

2  *Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citations omitted).

3      Here, Defendant was given ample opportunity to respond to the Complaint and participate in

4  the proceedings. As indicated above, Plaintiffs properly effected service of process on Defendant on

5  June 8, 2012. Dkt. No. 6. Thus, Defendant was put on notice of this litigation. Further, given that

6  Defendant's obligations under the Master Agreement are clear and supporting materials have been

7  provided, the possibility for any factual disputes is unlikely. Plaintiffs' claims for unpaid

8  contributions are based on Defendant's reporting of hours worked or based on an audit of

9  Defendant's records. Accordingly, the likelihood of disputes over the amount that Defendant owes is

10  minimal. The undersigned therefore finds that this factor weighs in favor of default judgment.

11      5.    Whether Default Was the Result of Excusable Neglect

12      The sixth *Eitel* factor examines whether Defendant's failure to respond to Plaintiffs'

13  allegations was the result of excusable neglect. *Eitel*, 782 F.2d at 1471-72. Here, Plaintiffs properly

14  served Defendant with the Summons and Complaint. Dkt. No. 6. Defendant made no appearance in

15  this matter and has not responded to Plaintiffs' Motion. There is nothing in the record suggesting that

16  Defendant's failure to appear and litigate this matter is based on excusable neglect. *Shanghai*

17  *Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper

18  service was not excusable neglect). As such, this factor weighs in favor of granting default judgment.

19      6.    Strong Public Policy Favoring Decisions on the Merits

20      The final *Eitel* factor examines whether the policy of deciding a case based on the merits

21  precludes entry of default judgment. *Eitel*, 782 F.2d at 1471-72. In *Eitel*, the Ninth Circuit

22  admonished that "[c]ases should be decided on their merits whenever reasonably possible." *Id.* at

23  1472. However, courts have recognized that "the mere existence of [Rule 55(b)] indicates that this

24  preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (internal

25  quotation and citation omitted). Similarly, other courts have stated that default judgment is

26  appropriate when a defendant refuses to litigate a case. *See, e.g.*, *Bd. of Trs. v. RBS Wash. Blvd, LLC*,

27  2010 WL 145097, at *4 (N.D. Cal. Jan. 8, 2010). Here, given that Defendant has not participated in

28

the proceedings, a decision on the merits is not possible.  In situations such as this, Rule 55(b)(2) allows the Court to grant default judgment.  This final factor thus weighs in favor of granting Plaintiffs' Motion.

**D.     Summary**

Based on the foregoing analysis, the undersigned finds that each of the *Eitel* factors weighs in favor of granting default judgment.  The undersigned therefore **RECOMMENDS** that the Court **GRANT** Plaintiffs' Motion.

**E.     Relief Sought**

Having found default judgment appropriate, the undersigned turns to the issue of damages. Under ERISA § 502(g), 29 U.S.C. § 1132(g), a plan fiduciary who prevails on a § 1145 claim is entitled to: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) an amount equal to the greater of interest on the unpaid contributions or liquidated damages as specified in the plan; (4) reasonable attorneys' fees and costs; and (5) other appropriate legal or equitable relief.  *Bay Area Painters & Tapers v. Brown*, 2007 WL 1302982, at *4 (N.D. Cal. May 3, 2007).  Here, Plaintiffs seek $51,654.35 in unpaid contributions, and $37,534.46 in liquidated damages and interest.  Br. at 1. Plaintiffs also seek an award of attorneys' fees and costs.  *Id.*  The undersigned evaluates each in turn.

1.     Delinquent and Unpaid Contributions

Pursuant to the parties' Agreements, Plaintiffs seek an award of unpaid contributions in the amount of $51,654.35.  Br. at 2.  In support of this amount, Plaintiffs have submitted declarations from Ms. Lauziere, the Accounts Receivable Manager for the Laborers Funds Administrative Office of Northern California, Inc.[5] and Edward J. Smith, the Trust Fund Manager for the Laborers Funds

---

[5]  As the Accounts Receivable Manager, Ms. Lauziere monitors the compliance of employers that are signatories to the collective bargaining agreements underlying the Trust Funds – she oversees the records of the employer's enrollment under the collective bargaining agreement, the employer's submission of monthly employer reports, and the employer's payment of monthly fringe benefit contributions.  Lauziere Decl. ¶ 2.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Administrative Office of Northern California, Inc.[6]  Dkt. Nos. 25 (Lauziere Decl.), 35 (Suppl.

2  Lauziere Decl.), 36 (Declaration of Edward J. Smith).

3        For the period of March 2010 through August 2011, and June 2012, Ms. Lauziere indicates

4  that Defendant reported the hours worked by, or paid to, each of its employees, but failed to remit the

5  full payments due along with its Employer Reports of Contributions detailing the amounts owed by

6  them.  Lauziere Decl. ¶ 11 & Ex. E; Suppl. Lauziere Decl. ¶ 6 & Exs. A & B.  Based on these

7  Reports, Defendant currently owes at least $43,931.85[7] in delinquent fringe benefit contributions for

8  these months.  *Id*.  The undersigned has reviewed the spreadsheets itemizing the outstanding

9  contribution payments and finds them to be accurate.

10       Ms. Lauziere's Declarations also state that the Fund Office performed an audit for the period

11  January 2007 through June 2009, and found that Defendant failed to report and failed to pay

12  contributions due and owing for its covered employees in the amount of $7,722.50.  Lauziere Decl. ¶

13  13 & Ex. F (audit summary report); Suppl. Lauziere Decl. ¶ 15 & Ex. E.  The undersigned has

14  reviewed the parties' Agreements and audit summary report and finds that the calculations are

15  accurate.

16       Taken together, Plaintiffs have sufficiently demonstrated they are entitled to $51,654.35 in

17  unpaid contributions.

18       2.      Liquidated Damages and Interest

19       In addition, Plaintiffs seek interest and liquidated damages on all unpaid contributions,

20  totaling $37,534.46.  Br. at 2.

21       Section 1132(g)(2) of ERISA permits a plan fiduciary to collect interest on all delinquent

22  contributions once it has prevailed on a § 1145 claim.  29 U.S.C. § 1132(g)(2).  The "interest [rate] on

23  _____

24       [6] As the Trust Fund Manager, Mr. Smith administers the day-to-day functions of the Trust
    Fund office.  This includes the payment of employer contributions pursuant to collective bargaining

25  agreements and trust agreements, and the management of all delinquent accounts.  He is also

26  responsible for overseeing reporting, compliance, and control of employer delinquencies and fringe
    benefit contributions based upon employer audits.  Smith Decl. ¶ 2.

27

28       [7] *See supra* note 4.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  unpaid contributions shall be determined by using the rate provided under the plan, or if none, the

2  rate prescribed under section 6621 of Title 26."  29 U.S.C. § 1132(g)(2).  Plaintiffs indicate that an

3  interest rate of 1.5% per month was applied on all unpaid contributions.  Lauziere Decl. ¶ 10; Suppl.

4  Lauziere Decl. ¶ 4.  In her Supplemental Declaration, Ms. Lauziere explains that interest was

5  assessed for each Trust Fund based on the unpaid balance each month.  Suppl. Lauziere Decl. ¶ 7.

6  For each month that contributions remain unpaid, that balance was multiplied by 1.5% to obtain an

7  interest charge.  *Id.*  The interest was not added to the balance of contributions due for the next

8  month's interest charge.  *Id.*  When payments were received, the payments were credited toward the

9  balance of unpaid contributions, resulting in a reduced interest charge in subsequent months.  *Id.*

10       Other courts have found that a 1.5% monthly interest rate on unpaid contributions is

11  appropriate under § 1132(g)(2).  *See, e.g.*, *Chicago Dist. Council of Carpenters Pension Fund v.*

12  *Indus. Erectors, Inc.*, 840 F. Supp. 1248, 1255 (N.D. Ill. 1993) (finding that an interest rate of 1.5%

13  per month was reasonable and appropriate); *Operating Eng'rs Local 139 Health Benefit Fund v.*

14  *Gustafson Const. Corp.*, 258 F.3d 645, 655 (7th Cir. 2001) (holding that "1.5 percent a month (or 18

15  percent a year) is not unconscionable"); *see also*, *Bd. of Trustees v. El Camino Paving Inc.*, 2012 WL

16  3658179, at *3 (N.D. Cal. Aug. 1, 2012) *report and recommendation adopted*, 2012 WL 3651130

17  (N.D. Cal. Aug. 24, 2012) (recommending and granting motion for default judgment with an interest

18  rate of 1.5% per month on all unpaid contributions).

19       As to liquidated damages, the Ninth Circuit has made clear that an award of liquidated

20  damages under § 1132(g)(2) is "mandatory and not discretionary."  *Operating Eng'rs Pension Trust*

21  *v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984).  A plaintiff is entitled to a

22  mandatory award under § 1132(g)(2) if the following requirements are met: (1) the employer must be

23  delinquent at the time the action is filed; (2) the district court must enter a judgment against the

24  employer; and (3) the plan must provide for such an award.  *Nw. Adm'rs, Inc. v. Albertson's, Inc.*,

25  104 F.3d 253, 257 (9th Cir. 1996).  Any liquidated damages provided in a trust agreement cannot be

26  in excess of 20% of the amount of unpaid contributions.  29 U.S.C. § 1132(g)(2)(C)(ii).  Ms. Lauziere

27  states that a flat fee of $150.00 per month was assessed as liquidated damages on all unpaid

28

contributions.  Lauziere Decl. ¶ 10; Suppl. Lauziere Decl. ¶ 4.  Plaintiffs adopted the $150 fee based on the recommendations of Hemming Morse, Inc., a Certified Public Accounting Firm, which conducted a study for Plaintiffs and found that the flat fee and interest assessments are reasonable and less than the actual cost to the Trust Funds of collecting unpaid contributions.  Lauziere Decl. ¶ 10; Smith Decl. ¶¶ 6-8 (Oct. 18, 2013); *see also*, *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 217 (9th Cir. 1989) (liquidated damages amount must be a reasonable forecast of just compensation for the harm caused); *Parkhurst v. Armstrong Steel Erectors, Inc.*, 901 F.2d 796, 798 (9th Cir. 1990) (requiring "a good faith attempt to set an amount reflective of anticipated damages"); *Tragni v. Souther Elec. Inc.*, 2009 WL 3052635 (N.D. Cal. Sept. 22, 2009) (finding that a liquidated damages rate based on a study determining the reasonable calculation of costs incurred for late payments was sufficient to demonstrate Plaintiffs' good faith efforts to set a fair liquidated damages amount); *El Camino Paving Inc.*, 2012 WL 3658179 at *3, *report and recommendation adopted*, 2012 WL 3651130 (assessing liquidated damages at $150 per month).

In this case, Plaintiffs have satisfied all three requirements for an award under § 1132(g)(2). First, Plaintiffs have demonstrated that Defendant was delinquent in making its contractually obligated payment contributions and have provided accountings itemizing the amounts underpaid for each month.  Lauziere Decl., Exs. E & F; Suppl. Lauziere Decl., Exs. A & E.  Second, the undersigned has recommended above that the District Court enter default judgment against Defendant.  Third, Article II, section 10 of the Trust Agreements allows the Board of Trustees of the Trust Funds to assess liquidated damages following an employer's default.  Lauziere Decl. ¶ 10 (citing to Art. II, § 10 of the Trust Agreements, Ex. A); Suppl. Lauziere Decl. ¶ 4.  Thus, liquidated damages are appropriate in this case.

Utilizing the foregoing figures for interest and liquidated damages, the Trust Funds calculated interest on the delinquent payments for the period of March 2010 through August 2011 and June 2012, in the amount of $23,934.05, and liquidated damages in the amount of $5,100.  Lauziere Decl. ¶ 11 & Ex. E; Suppl. Lauziere Decl. ¶¶ 7-14 & Exs. A, B, C & D.  In addition, based upon the audit

**UNITED STATES DISTRICT COURT**
For the Northern District of California

14

1   conducted pursuant to the parties' Agreements, the auditor calculated that Defendant owed interest in

2   the amount of $8,500.41, covering the period from January 2007 through June 2009.  Lauziere Decl.

3   ¶ 13 & Ex. F; Suppl. Lauziere Decl. ¶ 15-17.  To arrive at this number, interest was calculated by

4   multiplying the unpaid contributions by 1.5% to achieve a monthly interest amount, which was then

5   multiplied by the number of months that had elapsed since the payments were due.  Suppl. Lauziere

6   Decl. ¶ 16.  Liquidated damages were not assessed on the unpaid contributions for this time period.

7   *Id.* ¶ 15.

8        The undersigned has reviewed the itemizations submitted in support of Plaintiffs' calculation

9   of interest and liquidated damages and finds them to be accurate.  Accordingly, the undersigned finds

10  that Plaintiffs have met their burden of showing entitlement to liquidated damages and interest and

11  recommends that Plaintiffs be awarded liquidated damages and interest in the amount of $37,534.46.

12       3.    <u>Attorneys' Fees and Costs</u>

13       Finally, Plaintiffs seek attorneys' fees in the amount of $13,232.50 and $2,315.12 for costs

14  incurred in this action.  Br. at 8.  The parties' Agreements provide that if an employer fails to abide

15  by the terms of the agreement with regard to fringe benefit payment and legal consultation is sought

16  by the Board of Trustees, reasonable attorneys' fees, costs, and expenses incurred in enforcing

17  collection will be paid by the delinquent employer.[8]  Lauziere Decl. ¶¶ 15-16.  Based on this

18  contractual authorization, Defendant is liable for attorneys' fees and costs incurred by the Trust

19  Funds in seeking to collect the delinquencies and compel the audit at issue.  *Trs. of Bricklayers &*

20  *Allied Craftworkers Local 13 Defined Contribution Pension Trust for S. Nev. v. Marbella Flooring,*

21  *Inc.*, 2011 WL 6026613, at *5-6 (D. Nev. Dec. 2, 2011); *Kemner v. Dist. Council of Painting &*

22  *Allied Trades No. 36*, 768 F.2d 1115, 1120 (9th Cir. 1985).  Further, plan fiduciaries who obtain a

---

24       [8]  The following provisions provide that reasonable attorneys' fees, costs, and expenses

25  incurred in enforcing collection will be paid by the delinquent employer: Art. IV, § 3 of the Health
    & Welfare Trust Fund for Northern California (Lauziere Decl., Ex. A, part 1, at *10), Art. IV, § 3 of

26  the Pension Trust Fund for Northern California (*id.*, part 2, at *10); Art. IV, § 3 of the Vacation-

27  Holiday Trust Fund (*id.*, part 3, at *11); and Art. IV, § 3 of the Laborers Training and Retraining
    Trust Fund (*id.*, part 4, at *10).

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  judgment on a § 1145 claim are entitled to "reasonable attorneys' fees and costs of the action."  29

2  U.S.C. § 1132(g)(2)(D).

3       Plaintiffs have submitted evidence indicating they incurred court costs, consisting of filing

4  fees, service fees, and electronic research costs in the total amount of $2,315.12.  Declaration of

5  Daniel S. Brome, Dkt. No. 26 ("Brome Decl.") ¶ 13 & Ex. B.  As they appear reasonable, the

6  undersigned **RECOMMENDS** that the District Court award these costs.

7       Plaintiffs also seek $13,232.50 in attorneys' fees.  Br. at 8.  Under ERISA § 1132(g)(2), fee

8  awards are mandatory; however, courts should consider the reasonableness of these fees.  *Kemmis v.*

9  *McGoldrick*, 706 F.2d 993, 997-98 (9th Cir. 1983) (stating that § 1132(g)(2) "now makes the award

10  of attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund

11  contributions").  The Ninth Circuit has articulated five factors that should be considered in

12  determining reasonable attorney fees: (1) the degree of the opposing parties' culpability or bad faith;

13  (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against

14  the opposing parties would deter others from acting under similar circumstances; (4) whether the

15  parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to

16  resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties'

17  positions.  *Hummell v. S.E. Rykoff & Co*., 634 F.2d 446, 453 (9th Cir. 1980).  These factors are

18  intended to guide the court in its discretion, but none of the factors are dispositive; any combination

19  can support an award of fees.  *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Acc. Ins. Co*., 25

20  F.3d 743, 749 (9th Cir. 1994).

21       Here, the award of attorneys' fees would deter other employers from becoming delinquent on

22  employee contributions because fees can add greatly to the amount of unpaid contributions.  An

23  award of fees further encourages employers to be more diligent in their record keeping and prompt

24  with their payment.  Also, Plaintiffs' claims have been adequately supported and the merits of their

25  position are well-grounded.  Accordingly, the undersigned finds that the above factors weigh in favor

26  of awarding attorneys' fees to Plaintiffs.

27       Once fees under ERISA are awarded, the Court must calculate the lodestar amount to assess

28

16

1    the reasonableness of attorneys' fees.  *Credit Managers Ass'n of S. Cal.*, 25 F.3d at 750.  The lodestar

2    amount is determined by "multiplying the number of hours reasonably expended on the litigation by a

3    reasonable hourly rate."  *Id.* (internal quotations and citation omitted).  In awarding attorneys' fees,

4    courts must look to the prevailing market rates in the relevant community.  *Bell v. Clackamas Cnty.*,

5    341 F.3d 858, 868 (9th Cir. 2003).

6            In this case, Plaintiffs' counsel billed a total of 44.25 hours in connection with this suit.

7    Brome Decl. ¶ 5 & Ex. A.  In support of their fee request, Plaintiffs have submitted descriptions of

8    each attorney and paralegal who worked on this matter.  *Id.* ¶¶ 6-11.

9            Barry Hinkle is a shareholder with the law firm of Weinberg, Roger & Rosenfeld.  Brome

10   Decl. ¶ 6.  Mr. Hinkle graduated from University of California at Hastings and was admitted to the

11   California Bar in 1976.  *Id.*  Mr. Hinkle has been with the firm for 27 years, specializing exclusively

12   in ERISA work, and has represented trust fund clients in Hawaii, Arizona, Nevada, Alaska, and

13   Northern California.  *Id.*  Mr. Hinkle's time was billed at the Shareholder Rate of $345.00 per hour.

14   *Id.*

15           Concepción E. Lozano-Batista is a shareholder with the law firm.  Brome Decl. ¶ 7.  Ms.

16   Lozano-Batista earned a Bachelor of Arts degree in Political Science and Spanish Literature in May

17   1996 from UC Berkeley.  *Id.*  She graduated from the University of San Francisco School of Law in

18   May 2003 and was admitted to the Bar in December 2003.  *Id.*  Ms. Lozano-Batista has been with the

19   law firm since August 2004, working on ERISA matters, including collection work in state and

20   federal courts on behalf of a number of trust fund clients, litigating and counseling on issues

21   involving ERISA, trust fund collection, benefit denials, as well as general litigation work on

22   numerous cases.  *Id.*  Her time was billed at the Shareholder Rate of $345.00 per hour.  *Id.*

23           Ezekiel D. Carder is a shareholder with the law firm.  Brome Decl. ¶ 8.  Mr. Carder graduated

24   from the Northwestern School of Law at Lewis and Clark College, and was admitted to the California

25   Bar in May 2000.  *Id.*  Mr. Carder works on ERISA matters, including collection work in state and

26   federal courts on behalf of a number of Trust Fund clients, litigating and counseling on issues

27   involving ERISA, trust fund collection, benefit denials, as well as general litigation work on

28

1  numerous cases.  *Id.*  His time was billed at the Trust Fund rate of $345.00 per hour.  *Id.*

2       Daniel Brome is an associate with the law firm.  Brome Decl. ¶ 9.  He received his

3  undergraduate degree from Princeton University in 2005, and his Juris Doctor from the University of

4  California, Berkeley School of Law (Boalt Hall) in 2011.  *Id.*  He was admitted to the California Bar

5  in December 2011, and joined the law firm in February 2012.  *Id.*  He works on a variety of ERISA

6  matters, including collection work in state and federal courts on behalf of Trust Fund clients,

7  litigating and counseling on issues involving ERISA, benefit denials, as well as general litigation and

8  arbitration work.  *Id.*  His time is billed at the Trust Fund Associate rate of $290.00 per hour.  *Id.*

9       Eleanor Natwick is a paralegal with the law firm.  Brome Decl. ¶ 10.  Ms. Natwick holds a

10 Bachelor of Arts in English from Western Michigan University.  *Id.*  Ms. Natwick has been with the

11 firm for 26 years, and has worked as a litigation case clerk since March 1, 2003.  *Id.*  Ms. Natwick

12 earned her paralegal certificate from the University of California at Berkeley in June 2006, and was

13 promoted to the position of paralegal at the law firm.  *Id.*  Ms. Natwick's hourly billable time was

14 billed at $145.00 per hour.  *Id.*

15      Judy Castillo is a senior paralegal in the law firm.  Brome Decl. ¶ 11.  Ms. Castillo earned her

16 court reporting certificate from the College of Marin in 1994.  *Id.*  She attended Cal State Hayward

17 (East Bay) from 1994 through 1996.  *Id.*  She received her paralegal certificate from Cal State

18 Hayward (East Bay) in 1996.  *Id.*  Ms. Castillo's hourly billable rate on Trust Fund cases is $145.00.

19 *Id.*

20           *a.*    *Reasonableness of Hourly Rates*

21      To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate

22 must be assessed.  *Credit Managers Ass'n of S. Cal.*, 25 F.3d at 750.  In doing so, the Court looks to

23 the prevailing market rates in the relevant community for similar work by attorneys of comparable

24 skill, experience, and reputation.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.

25 2008).  Generally, the relevant community is the forum where the district court sits.  *Id.*

26      Here, Plaintiffs' claimed attorney hourly rates range from $290 to $345 per hour, and the

27 support staff hourly rate is $145.  Brome Decl. ¶¶ 6-11.  Plaintiffs' hourly rates are within the range

28

1   found reasonable in ERISA actions by other judges in the Northern District.  *See, e.g.*, *Perez*, 2011

2   WL 6151506, at *14 (finding hourly rates of $325 and $345 reasonable in ERISA case).  After

3   reviewing Plaintiffs' billing records and considering the experience of counsel, the undersigned finds

4   that the hourly rates are reasonable and consistent with prevailing market rates in the Northern

5   District.

6                    *b.      Reasonableness of Hours Billed*

7          In order to assess whether the number of hours billed is reasonable, Plaintiffs must submit

8   detailed records justifying the hours that have been expended.  *Chalmers v. City of Los Angeles*, 796

9   F.2d 1205, 1210 (9th Cir. 1986).  The Court may reduce the hours through its discretion "where

10   documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the

11   hours expended are deemed excessive or otherwise unnecessary."  *Id.*

12          In this case, Plaintiffs' counsel billed a total of 44.25 hours.  Brome Decl. ¶ 5 & Ex. A.  After

13   reviewing the billing records provided in Mr. Brome's Declaration, which offer a breakdown of the

14   work completed and the specific tasks performed, the undersigned finds that a reduction in the hours

15   billed is warranted.

16          First, Plaintiffs request that the Court award fees for Mr. Carder's work in this case.  On April

17   15, 2013, Mr. Carder billed .25 of an hour for reviewing the Case Management Conference Order.

18   Brome Decl. ¶ 8 & Ex. A at 2.  As the discussion above indicates, there is nothing particularly

19   complex or novel about this lawsuit.  It is a action under ERISA to recover unpaid contributions from

20   Defendant.  The Court does not see any reason why it was necessary for Mr. Carder to review the

21   CMC Order given that the case was already staffed with one other partner (Ms. Lozano-Batista) and

22   one associate (Mr. Brome).  The undersigned therefore recommends denying the time Mr. Carder

23   billed (.25 hours at $345, for a total of $86.25).

24          Second, counsel staffed this matter with two paralegals.  Looking at their time entries there

25   are instances of duplicate effort.  Specifically, on March 2, 2012, Ms. Castillo billed .25 of an hour

26   reviewing "applicable rules to determine due date triggered by Complaint filed."  *Id*., Ex. A at 2.  On

27   March 6, 2012, Ms. Natwick billed .50 of an hour for the same task.  *Id.* at 4.  Likewise, on March 8,

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

2012, Ms. Castillo billed .75 of an hour relating the address for Defendant's agent for service of process.  *Id.* at 2.  On the same date, Ms. Natwick billed .75 of an hour for "Lexis research re current agent of agent for service of process" for Defendant.  *Id.* at 4.  She also billed an unspecified amount of time for the same task on February 17, 2012.  *Id.*  Given the duplication of effort relating to these tasks, the undersigned recommends that the Court deny Plaintiffs' request to recover fees for Ms. Castillo's work (1 hour total at $145, for a total of $145).

Third, reviewing Ms. Natwick's time entries, she billed 4.25 hours relating to reviewing various rules in connection with different filings.  Plaintiffs' counsel has submitted that Ms. Natwick has over 26 years of experience with counsel's law firm and has been a paralegal since 2007.  Brome Decl. ¶ 10.  Given her experience and the fact that this was a routine filing in district court, it is unclear why it was necessary for Ms. Natwick to spend this amount of time reviewing routine procedural rules.  The undersigned therefore recommends that the Court deny fees relating to 4.25 hours of Ms. Natwick's work, for a total of $616.25.

Thus, the undersigned recommends that the following fees are appropriate.

| **Timekeeper** | **Hours Billed** | **Billing Rate** | **Total Fee** |
| --- | --- | --- | --- |
| Daniel Brome | 16.25 | $290.00 | $4,712.50 |
| Barry Hinkle | 1.25 | $345.00 | $431.25 |
| Conchita Lozano-Batista | 15.0 | $345.00 | $5,175.00 |
| Eleanor Natwick | 6 | $145 | $870.00 |
| | | | **$11,188.75** |

The undersigned thus recommends that Plaintiffs be awarded attorneys' fees in the amount of $11,188.75, which represents the total itemized fees up to the time of Mr. Brome's Declaration.

In his Declaration, Mr. Brome also requests that the Court award "expected" fees in the amount of $1,160.00.  Brome Decl. ¶ 12.  Mr. Brome states that, "[t]he unbilled work associated with Plaintiffs' Motion for Default Judgment is estimated at approximately $1,160.00 and includes an appearance at the hearing on the motion for default judgment and follow-up work regarding the judgment entered by the Court."  *Id.*  As indicated above, the undersigned vacated the hearing on this

UNITED STATES DISTRICT COURT
For the Northern District of California

1  matter, thereby obviating the need for counsel's appearance in court.  The undersigned also finds that

2  Plaintiffs have failed to articulate what "follow-up work" is necessary once the Court issues its order

3  on Plaintiffs' Motion.  The undersigned declines to recommend that these additional fees be awarded

4  at this time.  Plaintiffs may raise this issue before the District Court judge upon reassignment.

5       Accordingly, the undersigned **RECOMMENDS** that the District Court award Plaintiffs

6  $11,188.75 in attorneys' fees and $2,315.12 in costs, for a total of $13,503.87.

7       4.   <u>Audit and Continuing Jurisdiction</u>

8       Finally, Plaintiffs seek to conduct an audit of Defendant's records from July 2009 through the

9  present in order to discover additional amounts due and owing.  Compl. ¶ XVIII; Br. at 9.  Plaintiffs

10  also ask the Court to retain jurisdiction in order to ensure payment of any further delinquent amounts

11  discovered during such audit.  Compl. at 6; Br. at 9.  In ERISA cases, courts may retain jurisdiction to

12  adjust the damages award following an audit.  *See, e.g.*, *Bd. of Trs. v. KMA Concrete Constr. Co.*,

13  2011 WL 4031136, at *8 (N.D. Cal. Aug. 12, 2011) (recommending district court retain jurisdiction

14  to account for further delinquencies discovered by an audit after proper showing by the plaintiff),

15  2011 WL 4031100, at *1 (N.D. Cal Sept. 8, 2011) (adopting report and recommendation); *RBS Wash.*

16  *Blvd. LLC*, 2010 WL 145097, at *6-7 (same).

17       Pursuant to Article IV, section 7 of each of the Trust Agreements, the Trust Funds have the

18  right to compel an audit to ensure compliance with the Agreements.  Lauziere Decl. ¶ 14 & Ex. A[9]

19  (stating, in relevant part: "Upon receipt of a written request from the Board, an Individual Employer

20  agrees to permit an auditor designated by the Board to . . . examine and copy books, records, papers

21  or reports of that Individual Employer necessary to determine whether that Individual Employer is

22  making full and prompt payment of all sums required to be paid by him or it to the Fund.").

23  Defendant also agreed to pay all contributions due and owing by virtue of said audit.  The Complaint

24  gave Defendant clear notice that Plaintiffs would seek an audit, specifying the time period, and that

25

26      [9] *See* Art. IV, § 7 of the Health & Welfare Trust Fund for Northern California (Lauziere
    Decl., Ex. A, part 1, at *12); Art. IV, § 7 of the Pension Trust Fund for Northern California (*id.*, part

27  2, at *12); Art. IV, § 7 of the Vacation-Holiday Trust Fund (*id.*, part 3, at *13); and Art. IV, § 7 of
    the Laborers Training and Retraining Trust Fund (*id.*, part 4, at *12).

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Defendant would be expected to pay further past-due amounts discovered by the audit.  Compl. at 6.

2  Thus, pursuant to the Trust Agreements, Plaintiffs are entitled to conduct an audit and demand

3  payment of properly substantiated additional delinquencies.  Accordingly, the undersigned

4  **RECOMMENDS** that Defendant be ordered to submit to an audit of its records from July 2009 to

5  the present, and that the District Court retain jurisdiction over this matter pending a timely audit to

6  amend the judgment upon a proper showing by Plaintiffs.

7  ### IV.   CONCLUSION

8  Because Defendant has not consented to the undersigned's jurisdiction, the Court **ORDERS**

9  the Clerk of Court to **REASSIGN** this case to an Article III District Court Judge.

10  Based on the above analysis, the undersigned **RECOMMENDS** that the District Court

11  **GRANT** Plaintiffs' Motion for Default Judgment (Dkt. No. 23) against Defendant.  Plaintiffs should

12  be awarded:

13      1.      unpaid contributions in the amount of $51,654.35;

14      2.      interest and liquidated damages on the unpaid contributions in the amount of

15          $37,534.46;

16      3.      attorneys' fees and costs in the amount of $13,503.87; and

17      4.      a mandatory injunction requiring Defendant to submit to an audit of its financial

18          records by Plaintiffs for the period July 1, 2009 to the present.

19  The undersigned further **RECOMMENDS** that the District Court retain jurisdiction over the

20  parties and the subject matter to enforce its mandatory injunction and to entertain a motion for a

21  further money judgment, should the audit disclose amounts that may be owed by Defendant.

22  Pursuant to Federal Rule of Civil Procedure 72(b)(2), a party may serve and file objections to

23  this Report and Recommendation within fourteen (14) days after being served.

24  **IT IS SO RECOMMENDED.**

25

26  Dated: November 4, 2013

27  _____
   Maria-Elena James
   United States Magistrate Judge

28

22